607 So.2d 397 (1992)
FLORIDA LEAGUE OF CITIES, et al., Petitioners,
v.
Jim SMITH, Etc., Respondent.
No. 80489.
Supreme Court of Florida.
October 29, 1992.
Irwin J. Block, Ross A. McVoy and Benjamin K. Phipps, Fine, Jacobson, Schwartz, Nash & Block, and Jane C. Hayman, Deputy Gen. Counsel and Nancy Stuparich, Asst. Gen. Counsel, Florida League of Cities, Inc., Tallahassee, for petitioners.
Robert A. Butterworth, Atty. Gen., Richard E. Doran, Asst. Deputy Atty. Gen. and Louis F. Hubener, Asst. Atty. Gen., Tallahassee, for respondent.
*398 Theodore L. Tripp, Jr., Garvin & Tripp, P.A., Fort Myers, amicus curiae, for Save Our Homes, Inc.
Joseph W. Little, Gainesville, amicus curiae, for David Biddulph and Tax Cap Foundation, Inc.
KOGAN, Justice.
The Florida League of Cities and Florida Association of Counties petition this Court for writ of mandamus directing that respondent Jim Smith, the Florida Secretary of State and chief elections officer, remove from the November ballot proposed constitutional amendment 10. We have original jurisdiction. Art. V, § 3(b)(8), Fla. Const.
The facts regarding the proposed amendment at issue today are recited in this Court's earlier advisory opinion issued pursuant to article IV, section 10 of the Florida Constitution, and section 16.061, Florida Statutes (1991). In re Advisory Opinion to the Attorney General  Homestead Valuation Limitation, 581 So.2d 586 (Fla. 1991). In that proceeding, we expressed our opinion that the proposed amendment did not violate the single subject requirement of the Constitution, and likewise did not contain a ballot summary that failed to adequately advise voters of the amendment's effect. Id. at 588 (citing Askew v. Firestone, 421 So.2d 151, 155 (Fla. 1982)).
Petitioners now call to our attention an issue not addressed in our prior opinion. They note that article VII, subsection 6(d) of the Florida Constitution contains a provision that could be interpreted as repealing part of Florida's homestead exemption if the present amendment is approved by the voters in November. The repealer would take effect "on the effective date of any amendment to section 4 [of article VII] which provides for the assessment of homestead property at a specified percentage of its just value." Art. VII, § 6(d), Fla. Const. The present amendment affects section 4,[1] attempts to limit assessments, and thus could be construed as triggering the repealer.
The existing homestead exemption generally reduces a homeowner's property taxes by rendering a portion of the total assessment exempt from taxation. Three relevant exemptions exist. Article VII, subsection 6(a) of the Florida Constitution exempts the first $5,000 of the assessment from taxation for all purposes. Article VII, subsection 6(c) exempts an additional $20,000 from taxation solely for tax levies of school districts. Article VII, subsection 6(d) exempts an additional $20,000 from taxation for all taxing authorities other than school districts.
Only subsection 6(d) is subject to the repealer quoted above. Thus, if the repealer is activated by the proposed amendment, it will have the effect of eliminating $20,000 of the homestead tax exemption for all purposes except school-district taxation. Obviously, such a change in the existing law has sweeping ramifications for taxpayers and local governments. It also is obvious that the ballot summary we previously approved makes no reference whatsoever to the repealer.[2]
Initially, we must address the question of whether our earlier advisory proceeding precludes us from considering the present cause. It is true that article IV, section 10 and article V, subsection 3(b)(10) are silent as to whether the advisory proceeding raises a procedural bar or otherwise deprives this Court of jurisdiction over the present case. Thus, an ambiguity exists requiring judicial construction.
When those provisions were under consideration before the 1986 Legislature, the accompanying legislative staff summaries stated a belief that any advisory *399 opinion regarding initiative petitions would not be binding precedent[3] and would only constitute persuasive authority as to any other adversarial legal challenge that might later be raised. Staff of Fla. H.R.Comm. on Judiciary, CS/HJR 71 (1986), Staff Analysis 2 (March 6, 1986) (available from Fla.Div. of Archives); Staff of Fla.H.R.Comm. on Judiciary, PCS/HJR 71 (1986), Staff Analysis 2 (Feb. 18, 1986) (available from Fla.Div. of Archives).[4] This necessarily implies that other legal challenges would continue to be permissible under existing precedent; and our precedent clearly holds that a petition for mandamus is an appropriate method for challenging an allegedly defective proposed amendment to the Constitution. E.g., Askew; Smith v. American Airlines, Inc., 606 So.2d 618 (Fla. 1992).
We emphasize, however, that relitigation of issues expressly addressed in an advisory opinion on a proposed amendment is strongly disfavored and almost always will result in this Court refusing to exercise its discretionary jurisdiction. Renewed litigation will be entertained only in truly extraordinary cases, such as in the present case where a vital issue was not addressed in the earlier opinion.
On the question of whether this petition should be granted because of problems with the ballot summary, we first must note that no relief is possible unless the summary is clearly and conclusively defective. This could be established inter alia if the ballot summary is defective for "fail[ing] to specify exactly what was being changed, thereby confusing voters" or for "giv[ing] the appearance of creating new rights or protections, when the actual effect is to reduce or eliminate rights or protections already in existence." People Against Tax Revenue Mismanagement, Inc. v. County of Leon, 583 So.2d 1373, 1376 (Fla. 1991) (citing Askew, 421 So.2d at 154; Wadhams v. Board of County Comm'rs, 567 So.2d 414, 416-17 (Fla. 1990)).
In other words, there is no possible injury and no need for mandamus relief unless the repealer will be triggered by the proposed amendment. Triggering of the repealer would meet the criteria above, because it is clear that the ballot summary makes no mention of a possible loss of a portion of the homestead exemption. The parties conceded as much in oral argument.
On this question, we find that the language of the repealer itself is plain: It applies only if homestead property is assessed "at a specified percentage of its just value." Art. VII, § 6(d), Fla. Const. (emphasis added). The use of the word "specified" leaves no doubt as to the intent underlying the repealer.
"Specify" means "[t]o mention specifically; to state in full and explicit terms; to point out; to tell or state precisely or in detail; to particularize, or to distinguish by words one thing from another." Black's Law Dictionary 1399 (6th ed. 1991). "Specify" means a "statement explicit, detailed, and specific so that misunderstanding is impossible." Webster's Third New International Dictionary 1412 (1981) (discussion of synonyms of "mention"). Thus, a "specified percentage" is one that is both stated and precise.
Our construction of the Constitution today is strongly bolstered by the historical context from which the repealer emerged. In 1980, at least two separate and inconsistent proposals for property tax relief were proposed. The first included the repealer at issue here. The second, which failed to *400 obtain enough petition signatures to be placed on the ballot, expressly would have reduced all assessments in the state to sixty-five percent of just value. See Manning J. Dauer et al., Proposed Amendments to Florida Constitution to Be on Ballot on October 7, 1980 and on November 4, 1980 Elections 3 (Univ. of Fla. Pub. Admin. Clearing Service No. 63, 1980).
It thus is clear that, by using the specific language now included in the repealer, the framers intended that Florida voters in 1980 could choose one but not both of these proposals, thereby eliminating the mutual inconsistencies. A "yes" vote on the reduction in assessments to sixty-five percent automatically would have repealed the increased homestead exemption put to the voters that year. Obviously, the repealer by its own plain terms would apply in the future if a similar proposal involving a specified percentage reduction in assessments is placed on the ballot. However, such is not the case today. Proposed amendment 10 involves a variable cap that will not apply to all homestead property,[5] not a specified percentage reduction. Accordingly, amendment 10 will not trigger the repealer and thus will not reduce the homestead exemption.[6]
We acknowledge that there has been much inconsistent discussion of the exact meaning of the repealer contained in article VII, section 6(d). Some commentators have suggested albeit without analysis that the repealer will be triggered by any constitutional amendment that results in tax assessments at less than full market value. Steve Pajcic et al., Truth or Consequences: Florida Opts for Truth in Millage in Response to the Proposition 13 Syndrome, 8 Fla.St.U.L.Rev. 593, 618 (1980). Some of the historical materials submitted by the parties make a similar suggestion. However, these statements are cursory, vague, and unpersuasive.
In any event, the law is settled that when constitutional language is precise, its exact letter must be enforced and extrinsic guides to construction are not allowed to defeat the plain language. State ex rel. West v. Gray, 74 So.2d 114 (Fla. 1954); City of Jacksonville v. Continental Can Co., 113 Fla. 168, 151 So. 488 (1933). Ambiguity is an absolute prerequisite to judicial construction, id., and there is no ambiguity here. The repealer is triggered only when property is assessed "at a specified percentage of its just value." Art. VII, § 6(d), Fla. Const. (emphasis added). We are confident that, had the framers of this language intended a different result, they simply would have made the repealer effective when property is assessed "at less than its just value."
We also must acknowledge that there is a strong public policy against courts interfering in the democratic processes of elections. See Askew, 421 So.2d at 154; City of DeLand v. Fearington, 108 Fla. 498, 146 So. 573 (1933). In the present case, we are presented with essentially only two options: apply the plain language of the constitutional repealer, or go behind that language to embroil this Court in a legal controversy where none need exist, thereby halting the democratic process. Not only does the latter option violate public policy favoring the holding of a scheduled election, but it also would lead to a gross misapplication of the writ of mandamus.
Florida law is well settled that mandamus may be used only to enforce a right that is both clear and certain. E.g., Pino v. District Court of Appeal, 604 So.2d 1232 (Fla. 1992); Hatten v. State, 561 So.2d 562 *401 (Fla. 1990); Caldwell v. Estate of McDowell, 507 So.2d 607 (Fla. 1987). Mandamus may not be used to establish the existence of such a right, but only to enforce a right already clearly and certainly established in the law. E.g., State ex rel. Glynn v. McNayr, 133 So.2d 312 (Fla. 1961); Florida Society of Newspaper Editors, Inc. v. Florida Public Service Commission, 543 So.2d 1262 (Fla. 1st DCA), review denied, 551 So.2d 461 (Fla. 1989).
It is unquestionable that no such clear right exists here. We have found no prior judicial opinion construing the repealer, much less establishing that the language means something other than what it states. The plain language of the repealer indicates that the harm petitioners fear is not even real. In order to grant petitioner's request, we would be required to create a controversy and then resolve it, thereby establishing the "clear" and "certain" legal right in the same opinion in which mandamus would be granted. This we may not do.
We conclude that the proposed amendment will not trigger the repealer contained in article VII, section 6(d) of the Florida Constitution. For this same reason, we also conclude that nothing has changed that would require us to revisit our prior determination that proposed amendment 10 complies with the singlesubject rule. See art. XI, § 3, Fla. Const. Based on the foregoing, it is clear that petitioners are not entitled to the relief they request. Mandamus is not an appropriate remedy for an injury that cannot possibly occur. Accordingly, we deny all requested relief. No motion for rehearing will be entertained.
It is so ordered.
McDONALD and HARDING, JJ., concur.
BARKETT, C.J., concurs specially with an opinion.
OVERTON, J., dissents with an opinion, in which SHAW and GRIMES, JJ., concur.
GRIMES, J., dissents with an opinion, in which OVERTON, J., concurs.
BARKETT, Chief Justice, specially concurring.
Both the majority and the dissent necessarily interpret section 6(d) to reach a conclusion. I am persuaded that the strict interpretation of the majority, which harmonizes the two provisions in question, is the more correct. That approach applies the long-standing principles of constitutional and statutory construction of looking to the plain meaning of the language and of harmonizing separate provisions so as to give effect to each. Justice Overton "cannot accept [the majority's] interpretation of section 6(d) because it is contrary to that present constitutional provision's clear intent and purpose." Dissenting op. at 402. However, the intent and purpose is clear from the plain, specific language of the provisions in question, and those expressions of intent can be harmonized and honored without further interpretation.[7] Accordingly, I join the opinion of Justice Kogan.
OVERTON, Justice, dissenting.
I dissent. I am continually troubled that this Court is placed in the position of determining at the last minute the validity of proposed constitutional amendments and, as a result, is requested to remove proposals from the ballot. This denies the electorate the opportunity to vote on proposed amendments. There has to be a better way to address this type of issue at an earlier time. This case illustrates my frustration. Here, we have a substantial issue being raised for the first time just weeks before the election. Clearly, opportunities for addressing this claim existed in earlier proceedings before this Court. The legal issue before us is serious, has merit, and, frankly, should have been addressed long before this late date. Despite my concerns, however, I agree with the majority's *402 position that we have jurisdiction to decide this matter now.
Nevertheless, I must dissent from the majority opinion. In my view, the majority's construction of article VII, section 6(d), is contrary to that section's unambiguous intent and purpose. I believe that proposed amendment 10, which adds section 4(c) to article VII of the Florida Constitution, clearly implements the triggering mechanism of article VII, section 6(d), of our constitution and would reduce the homestead exemption by $20,000 for all purposes except school-district taxation.
To explain my position, it is necessary to set out both proposed amendment 10 as it will appear in section 4 of Article VII if it is adopted and existing section 6(d) of article VII:
SECTION 4. Taxation; assessments.  By general law regulations shall be prescribed which shall secure a just valuation of all property for ad valorem taxation, provided:
(a) Agricultural land, land producing high water recharge to Florida's aquifers or land used exclusively for non-commercial recreational purposes may be classified by general law and assessed solely on the basis of character or use.
(b) Pursuant to general law tangible personal property held for sale as stock in trade and livestock may be valued for taxation at a specified percentage of its value, may be classified for tax purposes, or may be exempted from taxation.
(c) All persons entitled to a homestead exemption under Section 6 of this Article shall have their homestead assessed at just value as of January 1 of the year following the effective date of this amendment. This assessment shall change only as provided herein.
1. Assessments subject to this provision shall be changed annually on January 1st of each year; but those changes in assessments shall not exceed the lower of the following:
(A) three percent (3%) of the assessment for the prior year.
(B) the percent change in the Consumer Price Index for all urban consumers, U.S. City Average, all items 1967=100, or successor reports for the preceding calendar year as initially reported by the United States Department of Labor, Bureau of Labor Statistics.
2. No assessment shall exceed just value.
3. After any change of ownership, as provided by general law, homestead property shall be assessed at just value as of January 1 of the following year. Thereafter, the homestead shall be assessed as provided herein.
4. New homestead property shall be assessed at just value as of January 1st of the year following the establishment of the homestead. That assessment shall only change as provided herein.
5. Changes, additions, reductions or improvements to homestead property shall be assessed as provided for by general law; provided, however, after the adjustment for any change, addition, reduction or improvement, the property shall be assessed as provided herein.
6. In the event of a termination of homestead status, the property shall be assessed as provided by general law.
7. The provisions of this amendment are severable. If any of the provisions of this amendment shall be held unconstitutional by any court of competent jurisdiction, the decision of such court shall not affect or impair any remaining provisions of this amendment.
The underlined portion constitutes the body of proposed amendment 10. Article VII, section 6(d), reads as follows:
(d) By general law and subject to conditions specified therein, the exemption shall be increased to a total of the following amounts of assessed value of real estate for each levy other than those of school districts: fifteen thousand dollars with respect to 1980 assessments; twenty thousand dollars with respect to 1981 assessments; twenty-five thousand dollars with respect to assessments for 1982 and each year thereafter. However, *403 such increase shall not apply with respect to any assessment roll until such roll is first determined to be in compliance with the provisions of section 4 by a state agency designated by general law. This subsection shall stand repealed on the effective date of any amendment to section 4 which provides for the assessment of homestead property at a specified percentage of its just value.
Undoubtedly, when section 6(d) was adopted by the people in 1979, its purpose was (1) to provide homeowners with an additional $20,000 in homestead exemption and (2) to assure that all homesteads would be assessed under the same fair market value standard. The last sentence of section 6(d) is a repealer and makes it clear that the additional $20,000 exemption is dependent on equal treatment in the valuation of all homestead property.
The majority finds that proposed amendment 10 involves a variable cap that will not apply to all homestead property and, because it is a variable cap, it is not a "specified percentage" reduction. Consequently, the majority concludes that the repealer sentence in 6(d) does not apply. I cannot accept that interpretation of section 6(d) because it is contrary to that present constitutional provision's clear intent and purpose. In my view, the repealer sentence was intended to be triggered upon the adoption of any assessment standard other than fair market value.
To illustrate the effect that amendment 10 would have, assume that, in December, 1993, someone purchases the house next door to me. The neighbor's house would be assessed at full, just value as of January 1, 1994. On the other hand, my house, which I owned before January 1, 1993, would be assessed at just value as of January 1, 1994, only if that assessment is no more than its assessed value as of January 1, 1993, plus three percent. If the January 1, 1994, full, just value assessment is higher, then my property would be assessed at only a "specific percentage of its just value" because its assessment is computed by a fixed mathematical formula and assessed at a value less than its just value. The result is that some property will be assessed at a "specified percentage of its just value" while other property will be assessed at full, just value. While the average homeowner will receive some benefit, the greatest benefactors of amendment 10 eventually will be the owners of more expensive homes. This is just the situation that the repealer provision was designed to avoid.
The intent and purpose of article VII, section 6(d), when it was enacted was succinctly articulated in a law review article written long before proposed amendment 10 was filed. There the authors stated:
The increased homestead exemption is not applicable in any county until the Department of Revenue certifies that the county's assessment roll is in substantial compliance with the fair market value assessment standard. This prerequisite to tax relief serves three purposes. It provides an additional incentive for full value assessments; it prevents an erosion of the local tax base that would otherwise occur if assessments stayed constant but previously taxable property became exempt; and it protects non-homestead classes against a reverse shifting of the tax burden that would automatically occur if local governments increased millage rates to compensate for a reduction in the tax base.

The legislature also made the increased exemption contingent upon the state's retention of the fair market value standard. The future adoption of a fractional assessment standard would result in a reversion to the $5,000 exemption.
Steve Pajcic, et al., Truth or Consequences: Florida Opts for Truth in Millage in Response to the Proposition 13 Syndrome, 8 Fla.St.U.L.Rev. 593, 618 (1980) (emphasis added) (footnotes omitted).
The parties to this cause agree that the adoption of the proposed amendment would reduce the homestead exemption by $20,000 if the triggering mechanism of section 6(d) applies. The authors of proposed amendment 10 could have avoided this problem by including a provision to strike *404 the repealer mechanism from section 6(d). They did not do so. Nor did they notify the electorate of the effect of the repealer in the ballot summary. Because I believe the triggering mechanism of section 6(d) does apply, the ballot summary is grossly misleading. Consequently, amendment 10 should be removed from the ballot.
Further, although no claim has been presented that this amendment violates the equal protection clause of article I, section 2, of the Florida Constitution, I find that the application of amendment 10 may result in a serious equal protection violation. For example, two identical condominium units in the same building could be taxed at different amounts for identical public services because the amount of the tax would be calculated on the length of time the owners owned their respective units rather than on the true present value of their units. Both owners would receive the same services but pay different amounts of taxes  a result that might violate Florida's equal protection clause as that provision currently exists. While the adoption of amendment 10 might be constitutional under the federal constitution, see Nordlinger v. Hahn, ___ U.S. ___, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992), the issue of whether amendment 10 is constitutional under Florida's equal protection clause has not been resolved. Thus, the question arises as to whether Florida's equal protection clause is also being modified and amended by implication without appropriate notification to the voters. This question has not been raised, briefed, considered, or addressed by the parties. Consequently, that is now a claim that must wait to be presented to us in subsequent litigation if amendment 10 is adopted and we are then asked to address the constitutionality of its application under the equal protection clause of the Florida Constitution by affected property owners.
SHAW and GRIMES, JJ., concur.
GRIMES, Justice, dissenting.
The basic premise of the majority opinion is that the proposed amendment does not provide "for assessment of homestead property at a specified percentage of its just value." Yet, with respect to some homesteads, this is exactly what will occur. If the amendment passes, any homestead property which appreciates by more than 3% of the prior year's assessment will have to be assessed at an amount which is a specified percentage of its just value. It is illogical to conclude that the repealing sentence of section 6(d) only becomes activated by an amendment which requires an across-the-board reduction in homestead assessments. Moreover, the fact that the sponsors of the amendment did not intend to activate the repealer is legally irrelevant.
OVERTON, J., concurs.
NOTES
[1] We so recognized in our prior opinion in this matter. In re Advisory Opinion to the Attorney General  Homestead Valuation Limitation, 581 So.2d 586, 587 (Fla. 1991). The parties also concurred in this conclusion during oral argument.
[2] The summary states in its entirety:

HOMESTEAD VALUATION LIMITATION
Providing for limiting increases in homestead property valuations for ad valorem tax purposes to a maximum of 3% annually and also providing for reassessment of market values upon changes in ownership.
See In re Homestead Valuation Limitation, 581 So.2d at 588.
[3] This is entirely consistent with settled law holding that advisory opinions "are not binding judicial precedents, [although] they are frequently very persuasive and usually adhered to." Lee v. Dowda, 155 Fla. 68, 73, 19 So.2d 570, 572 (1944). As a corollary, we note that advisory opinions are only persuasive as to issues they actually address, not as to issues such as the one before us today that were not addressed at all in a prior advisory opinion.
[4] Although the committee substitutes discussed in these summaries were not themselves adopted, they differ in no relevant way from House Joint Resolution 71, which ultimately was adopted, placed before the voters, and approved. See Fla. HJR 71, 1986 Fla. Laws 2281, 2281-83.
[5] The cap is the least of the following: three percent above the prior year's assessment, or the percent change in the Consumer Price Index for all urban consumers, U.S. City average, or its successor. Moreover, a home that is sold or newly built must be assessed at full value in the following year, with the cap applying only in later years in which ownership remains unchanged. In re Homestead Valuation Limitation, 581 So.2d at 587. Thus, at any given moment, some Florida households would be assessed at full value while others would be subject to the cap.
[6] The Save Our Homes organization, which drafted and circulated proposed amendment 10, agreed with this construction. Their brief to this Court in the earlier advisory opinion expressly stated that amendment 10 would not affect the present homestead exemption.
[7] The drafters of Amendment 10 clearly intended to retain the $25,000 homestead exemption and to limit the increases in the assessment of homestead property. Considering this intent is as valid as considering that of the drafters of the 1980 amendment.