PERRY, J.
This case is before the Court for review of the decision of the Fourth District Court of Appeal in Treacy v. Lamberti, 80 So.3d 1053 (Fla. 4th DCA 2012), holding that the United States Supreme Court’s decision in Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), does not impact a juvenile defendant’s entitlement to bond because the Florida Constitution “focuses on the classification of the offense to determine entitlement to pretrial release, and not the potential severity of punishment.” Treacy, 80 So.3d at 1054. Because the district court expressly construed a provision of the Florida Constitution, this Court has jurisdiction to review the decision. See art. V, § 3(b)(3), Fla. Const. Because we find that juvenile offenders cannot be charged with a crime punishable by life imprisonment under Florida’s current statutory scheme and Graham, we hold that such defendants are entitled to bond under the provisions of article I, section 14, of the Florida Constitution and we quash the decision entered below.
OVERVIEW
Treacy is a juvenile charged as an adult with attempted first-degree murder with a deadly weapon. Treacy moved to have a bond set, which was denied.[1] Treacy argues that article I, section 14, of the Florida Constitution provides for pretrial release as a matter of right for a noncapital offense or an offense that does not carry the possibility of a life sentence. He further argues that because Florida does not currently provide an opportunity for parole and Graham prohibits the State from sentencing him to life without such a possibility, he is entitled to bond under the provisions of the Florida Constitution. The Fourth District Court disagreed, finding that because the Florida Constitution only considers the classification of the offense, not a defendant’s eventual sentence, Treacy was not entitled to bond as a matter of right. Furthermore, the Fourth District reasoned that the Legislature could provide an opportunity for parole at some point in the future, which would satisfy the requirements of Graham. The issue before us is whether the prohibition *176 in Graham provides that juveniles such as Treacy are entitled to bond as a matter of right. This issue is a matter of first impression for this Court. First, we reject the State’s assertion that Treacy may be sentenced to life imprisonment based on prospective legislation creating an opportunity for parole. The security of Constitutional rights, especially those involving individual liberty, is not a matter of legislative grace. Second, we adopt a strict construction of the plain language of the Florida Constitution and determine that because Treacy cannot be sentenced to life imprisonment, he cannot be charged with “an offense punishable by life imprisonment” under current Florida law. Accordingly, we quash the decision of the Fourth District.
STATEMENT OF THE CASE AND FACTS
On March 17, 2010, Treacy was arrested by the Broward County Sheriffs Office for attempted premeditated murder in the first degree.[2] Treacy was 15 years old at the time of his arrest. Treacy was taken into custody by the Department of Juvenile Justice and held until April 16, 2010, when the State filed an information against him charging him as an adult. Treacy was then transferred to the custody of the Broward County Jail.
On May 17, 2010, the United States Supreme Court issued its decision in Graham. Thereafter, on June 24, 2010, Trea-cy filed a Motion to Set Bond, which the trial court denied. In its order denying Treacy’s motion, the trial court agreed with the State’s assertion that Treacy was not entitled to bond as a matter of law. Specifically, the court found that Treacy was charged with an offense that “is clearly an ‘offense punishable by life imprisonment.’ ” See Treacy, 80 So.3d at 1054. The court then found that Graham “does not change the statute with respect to [Treacy’s] right to bond in the present case.” Id. Further, the court found that its reasoning was consistent with the Legislature’s intent in providing pretrial detention, citing section 907.041(1), Florida Statutes (2009): “Based upon the seriousness of the charge in the present case, the [c]ourt’s finding ... is also consistent with the legislative intent that persons committing serious criminal offenses be pretrial detained.” The court then declined to exercise its discretion to nevertheless grant Treacy a bond.
Treacy filed a Petition for Writ of Habe-as Corpus on July 16, 2010. The Fourth District Court of Appeal denied the petition without issuing an opinion. Subsequently, the Fourth District granted another juvenile’s petition for writ of habeas corpus under identical circumstances in McCray v. Lamberti, No. 4D11-3884 (Fla. 4th DCA Nov. 8, 2011). Treacy filed another motion with the trial court, which was again denied without any alteration to its previous decision.
On December 16, 2011, Treacy filed a second Petition for Writ of Habeas Corpus. The Fourth District issued an opinion denying the petition, and noted the inconsistent application it had created with its decision in McCray. Treacy, 80 So.3d *177 at 1055-56 (Polen, J., concurring specially). In its opinion, the Fourth District considered whether, because Graham held that the United States Constitution prohibits sentencing juvenile defendants who have not committed a homicide to life imprisonment without the possibility of parole, article I, section 14, of the Florida Constitution entitles juvenile defendants charged with non-homicide crimes to bond as a matter of right. First, the Fourth District stated that “[t]he Florida [Ljegislature has not enacted a parole system that would satisfy Graham by allowing juvenile defendants sentenced to life in prison a chance to be released.” Treacy, 80 So.3d at 1054. “Therefore,” the court reasoned, “life sentences for such juveniles are now subject to reversal based on Graham.” Id. (citing Cunningham v. State, 74 So.3d 568 (Fla. 4th DCA 2011); Garland v. State, 70 So.3d 609 (Fla. 1st DCA 2010), cert. denied, — U.S. -, 132 S.Ct. 574, 181 L.Ed.2d 441 (2011)). Next, the Fourth District determined that Graham does not impact the entitlement to bond because the Florida Constitution “focuses on the classification of the offense to determine entitlement to pretrial release, and not the potential severity of punishment.” Treacy, 80 So.3d at 1054. Adopting the reasoning of the trial court in its order denying Treacy’s motion to set bond, the Fourth District held that because attempted murder is an offense that is punishable by life imprisonment, Treacy’s actual eligibility for such punishment does not change his right to bond. Id. The court noted that its classification approach was supported by this Court’s decisions in Batie v. State, 534 So.2d 694 (Fla.1988) (holding that despite sexual battery’s classification as a non-capital crime, the Legislature’s definition of the crime as “capital” was sufficient to deny postconviction bond) and State v. Hogan, 451 So.2d 844 (Fla.1984) (holding that although a death sentence may not be imposed for a sexual battery, it is a capital offense for purposes of determining the maximum allowable sentence but is not a capital offense for purposes of determining whether a twelve-person jury is required). Last, the Fourth District noted that “were the [Ljegislature to enact a parole system for juveniles who have been sentenced to life for non-homicide offenses, this issue would not even arise.” Treacy, 80 So.3d at 1055.
DISCUSSION
We are presented with a matter of constitutional construction. Accordingly, our review is de novo. See Zingale v. Powell, 885 So.2d 277, 280 (Fla.2004). Furthermore, as we have stated, “when constitutional language is precise, its exact letter must be enforced.... ” Fla. League of Cities v. Smith, 607 So.2d 397, 400 (Fla.1992). Both the arguments presented by Treacy and the State are based on what is arguably a reasonable reading of the plain language of article I, section 14, of the Florida Constitution. However, their incongruent readings do not create an ambiguity where none exists. “Ambiguity is an absolute prerequisite to judicial con-struction_” Id. at 400. Accordingly, the plain language of the Florida Constitution prevails here. Article I, section 14, provides:
Unless charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great, every person charged with a crime or violation of municipal or county ordinance shall be entitled to pretrial release on reasonable conditions. If no conditions of release can reasonably protect the community from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judi *178 cial process, the accused may be detained.
(emphasis added). The State concedes that Treacy cannot be punished by life imprisonment under Florida’s current statutory sentencing scheme because of the constitutional prohibition announced in Graham:
The [United States] Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term.
Graham, 560 U.S. at 64, 130 S.Ct. 2011. Currently, the State of Florida does not provide any opportunity for parole, and any life sentence imposed is a sentence for a prisoner’s natural life. See § 921.002(1)(e), Fla. Stat. (2009) (“The sentence imposed by the sentencing judge reflects the length of actual time to be served, shortened only by the application of incentive and meritorious gain-time as provided by law, and may not be shortened if the defendant would consequently serve less than 85 percent of his or her term of imprisonment.... The provisions of chapter 947, relating to parole, shall not apply to persons sentenced under the Criminal Punishment Code.”). Because Treacy, and juveniles like him, cannot receive a life sentence, we hold that the plain language of the Florida Constitution provides that they are “entitled to pretrial release on reasonable conditions [that] reasonably protect the community from risk of physical harm.... ” See, art. I, § 14, Fla. Const.
The State asks us to construe the clause “offense punishable by life imprisonment” to encompass defendants who may not legally be sentenced to life imprisonment, arguing that it is the classification of the offense and not the available punishment that should control our interpretation. Because we find this interpretation inconsistent with the language of the provision, we decline to apply the State’s reasoning.
First, we reject the assertion that Trea-cy’s offense is “punishable by life imprisonment.” Because Florida does not currently provide any opportunity for juvenile parole, the trial court was correct that it “could not impose a life sentence.” We do not agree with the trial court’s statement that the Legislature could provide a parole mechanism without revising the charging statute. Irrespective of the Legislature’s future intent to provide juveniles sentenced to life imprisonment with a reasonable opportunity for parole, the current statutory scheme makes no such provision. A current violation of a constitutional right is not cured by the potential for future legislative goodwill.
Secondly, having found that Treacy cannot be sentenced to life imprisonment, we hold that article I, section 14, of the Florida Constitution prevents the trial court from denying his bond as a matter of right. While both the Seventeenth Judicial Circuit Court and the Fourth District Court of Appeal have determined that the Florida Constitution, Article I, Section 14, requires a classification-based contemplation of a defendant’s right to bond and not a punishment-based one, we find this conflicts with the unambiguous language of the constitutional provision. We therefore find that the Fourth District’s reliance on our decisions in Batie and Hogan is misplaced.
Under the unambiguous language of article I, section 14, Treacy is not charged with an offense punishable by life imprisonment because he, himself, cannot be sentenced to life. We therefore hold that Treacy is correct that the unavailability of a life sentence in his case prohibits the *179 classification of his offense as one “punishable by life imprisonment,” and quash the decision entered by the Fourth District below.
It is so ordered.
LEWIS, QUINCE, and LABARGA, JJ„ concur.
POLSTON, C.J., and CANADY, J., concur in result.
PARIENTE, J., recused.

. Treacy has subsequently been convicted of the offense for which he was charged and sentenced to a term not to exceed 20 years, followed by 10 years’ probation. We maintain jurisdiction in this case because "[i]t is well settled that mootness does not destroy an appellate court’s jurisdiction ... when the questions raised are of great public importance or are likely to recur.” Holly v. Auld, 450 So.2d 217, 218 n. 1 (Fla.1984).

. See §§ 782.04(1 )(a), Fla. Stat. (2009) ("[t]he unlawful killing of a human being [w]hen perpetrated from a premeditated design to effect the death of the person ... is murder in the first degree and constitutes a capital felony"); 777.04(4)(b), Fla. Stat. (2009) ("[i]f the offense attempted ... is a capital felony, the offense ... is a felony of the first degree”); 775.087(l)(a), Fla. Stat. (2009) ("whenever a person is charged with a felony ... and during the commission of such felony ... carries, displays, uses, threatens to use, or attempts to use any weapon or firearm ... the felony for which the person is charged shall be reclassified ... [i]n the case of a felony of the first degree, to a life felony.”).