PER CURIAM.
Interim Secretary of State Dawn Roberts has filed an extraordinary writ petition that invokes this Court’s all writs jurisdiction. Secretary Roberts also seeks a writ of prohibition on the basis that the Second Judicial Circuit Court is acting in excess of its jurisdiction by accepting jurisdiction to consider a pre-election action for declaratory and injunctive relief that seeks to remove two citizen-initiative proposed constitutional amendments from the November ballot. We have jurisdiction. See art. V, § 3(b)(7), Fla. Const. For the reasons discussed, we grant the petition and direct the circuit court to dismiss the pre-election proceedings below on the basis of lack of subject matter jurisdiction.
FACTS AND PROCEDURAL BACKGROUND
FairDistrictsFlorida.org, a registered political committee, invoked the citizen-initiative process of article XI, section 3 of the Florida Constitution to propose two constitutional amendments designed to delineate mandatory standards to be applied to the establishment of legislative and congressional district boundaries. On January 29, 2009, this Court approved the proposed amendments for placement on the ballot and determined that the proposed amendments satisfied the single-subject *676 requirement of article XI, section 3, and that the accompanying ballot titles and summaries complied with section 101.161, Florida Statutes (2008). See Advisory Op. to Att’y Gen. re Standards for Establishing Legis. Dist. Boundaries, 2 So.3d 175, 191 (Fla.2009). The legislative amendment was designated “Amendment 5” by the Division of Elections, and the congressional amendment was designated “Amendment 6.” See Fla. Dep’t of State Division of Elections: Initiatives/Amendments/Revisions, http://election.dos.state.fl. us/initiatives/initiativelist.asp?year=2010 & initstatus=ALL & MadeBallot=Y & ElecType=GEN (last visited August 31, 2010).
On June 23, 2010, plaintiffs Corrine Brown and Mario Diaz-Balart, both members of the United States House of Representatives, filed an amended complaint for declaratory and injunctive relief in the circuit court against Secretary Roberts and FairDistrictsFlorida.org which challenged the validity of only Amendment 6. The Florida House of Representatives and the Florida Senate attempted to intervene as plaintiffs. The intervenors attempted to challenge a different provision, the ballot summary of Amendment 5. The interve-nors also sought to inject two different claims — that the proposed amendments would violate the federal Voting Rights Act and that the amendments are “vague, conflicting, and unworkable.” Notwithstanding these significant differences, the circuit court permitted the addition of these claims even though they were different and beyond the scope of the original proceeding.
Secretary Roberts, FairDistrictsFlori-da.org, and intervening defendant Bob Graham filed motions to dismiss the complaint on the basis of lack of subject matter jurisdiction. The motions to dismiss asserted that the Florida Supreme Court has exclusive jurisdiction to determine pre-election challenges to proposed citizen-initiative amendments, and that this Court’s advisory opinion approving Amendments 5 and 6 for ballot placement precluded this additional litigation. Governor Charlie Crist, as amicus curiae, filed a memorandum of law in support of Secretary Roberts’ motion to dismiss.
The circuit court conducted a hearing on July 8, 2010, and issued a written order denying the motions to dismiss on July 12, 2010. The circuit court held that even though the Florida Constitution was amended in 1986 to create the advisory opinion review process for citizen-initiative amendments, the adoption of these provisions did not divest the circuit courts of jurisdiction to consider pre-election declaratory actions that challenge such amendments. The circuit court relied on the language from Florida League of Cities v. Smith, 607 So.2d 397 (Fla.1992):
When [the constitutional provisions creating the advisory opinion process] were under consideration before the 1986 Legislature, the accompanying legislative staff summaries stated a belief that any advisory opinion regarding initiative petitions would not be binding precedent and would only constitute persuasive authority as to any other adversarial legal challenge that might later be raised. Staff of Fla. H.R. Comm, on Judiciary, CS/HJR 71 (1986), Staff Analysis 2 (March 6, 1986) (available from Fla. Div. of Archives); Staff of Fla. H.R. Comm, on Judiciary, PCS/HJR 71 (1986), Staff Analysis 2 (Feb. 18, 1986) (available from Fla. Div. of Archives). This necessarily implies that other legal challenges would continue to be permissible under existing precedent; and our precedent clearly holds that a petition for mandamus is an appropriate method for challenging an allegedly defective *677 proposed amendment to the Constitution.
Id. at 398-99 (footnotes omitted). Based upon this reference to legislative staff summaries, the circuit court below accepted the argument that any method of challenging initiative amendment proposals that existed prior to 1986 survived the 1986 constitutional revision. The trial judge ultimately concluded that circuit courts retained full jurisdiction pursuant to sections 26.012(3) and 86.011, Florida Statutes, to consider pre-election declaratory and injunctive actions that challenged the validity of citizen initiative amendment proposals. The circuit court also relied upon Lane v. Chiles, 698 So.2d 260 (Fla.1997), in which this Court held that a post-election challenge to an initiative ballot summary was untimely.[1]
Secretary Roberts subsequently filed an extraordinary writ petition with this Court, which was joined by defendant Graham, and asked this Court to either exercise its all writs jurisdiction or issue a writ of prohibition to preclude the circuit court from proceeding with pre-election subject matter jurisdiction of the action challenging Amendments 5 and 6.
ANALYSIS

All Writs and the Writ of Prohibition

As a preliminary matter, the doctrine of all writs is not an independent basis for this Courts jurisdiction. See Besoner v. Crawford, 357 So.2d 414, 415 (Fla.1978). Rather, its use is restricted to preserving jurisdiction that has already been invoked or protecting jurisdiction that likely will be invoked in the future. See, e.g., United Servs. Auto. Ass’n v. Goodman, 826 So.2d 914, 915 (Fla.2002) (exercising all writs jurisdiction where circuit court orders “encroach[ed] upon this Court’s ultimate jurisdiction to adopt rules for the courts, see article V, section 2(a), specifically Rules of Judicial Administration, Rules of Civil Procedure, and Rules Regulating The Florida Bar”); Arbelaez v. Butterworth, 738 So.2d 326, 326 (Fla.1999) (considering all writs petition based upon Courts jurisdiction over death penalty cases); Wild v. Dozier, 672 So.2d 16, 17-18 (Fla.1996) (finding independent basis to review judicial assignment exists where Court has exclusive jurisdiction to review such assignments under its article V, section 2(a) authority to oversee the administrative supervision of all courts); Florida Senate v. Graham, 412 So.2d 360, 361 (Fla.1982) (finding underlying basis for jurisdiction to challenge Governors authority to limit a special apportionment session; that is, the Courts constitutional authority in the second year following each decennial census to review a legislative plan of apportionment).
Here, Secretary Roberts contends that we should exercise our all writs jurisdiction to protect our exclusive authority pursuant to article V, section 3(b)(10) of the Florida Constitution to consider pre-election challenges to the validity of citizen-initiative petitions. Thus, to determine whether the use of our all writs jurisdiction is warranted, we must determine whether our jurisdiction over such matters is exclusive.
With regard to prohibition, this Court has explained the limited applicability of the writ as follows:
Prohibition may only be granted when it is shown that a lower court is without jurisdiction or attempting to act in ex *678 cess of jurisdiction. It is preventive and not corrective in that it commands the one to whom it is directed not to do the thing which the supervisory court is informed the lower tribunal is about to do. Its purpose is to prevent the doing of something, not to compel the undoing of something already done.
English v. McCrary, 348 So.2d 293, 296-97 (Fla.1977). The applicability of the writ of prohibition in this case hinges upon the identical issue that is determinative of whether the doctrine of all writs applies; that is, the exclusiveness of this Court’s jurisdiction to consider pre-election challenges to proposed citizen-initiative constitutional amendments. If this Court maintains exclusive jurisdiction over such challenges, the circuit court is acting in excess of its jurisdiction by accepting jurisdiction to consider the declaratory action filed by the respondents, thereby warranting prohibition relief.
We conclude that, based upon the history of the advisory opinion amendments to the Florida Constitution and case precedent, our jurisdiction with regard to such pre-election matters is indeed exclusive, and therefore, use of our all writs and prohibition jurisdiction is both necessary and appropriate.

The 1986 Constitutional Amendments

In 1986, the Florida Constitution was amended to create the advisory opinion review process for citizen-initiative petitions. The purpose of the process “is to allow the Court to rule on the validity of an initiative petition before the sponsor goes to the considerable effort and expense of obtaining the required number of signatures for placement on the ballot.” Armstrong v. Harris, 773 So.2d 7, 13 n. 18 (Fla.2000); see also Askew v. Firestone, 421 So.2d 151, 157 (Fla.1982) (Overton, J., specially concurring) (noting with regard to the Court’s removal of a legislatively proposed amendment from the ballot, “It' concerns me that the public is being denied the opportunity to vote because no process has been established to correct misleading ballot language in sufficient time to change the language. To avoid future situations in which this Court may again have to exercise this extraordinary power of striking an amendment from the ballot due to misleading ballot language, the legislature and this Court should devise a process whereby misleading language can be challenged and corrected in sufficient time to allow a vote on the proposal.”).
Article IV, section 10 of the Florida Constitution provides that “[t]he attorney general shall, as directed by general law, request the opinion of the justices of the supreme court as to the validity of any initiative petition circulated pursuant to Section 3 of Article XI,” the provision of the Constitution which addresses amendment by citizen initiative. Article V, section 3(b)(10), provides that this Court “[s]hall, when requested by the attorney general pursuant to the provisions of Section 10 of Article IV, render an advisory opinion of the justices, addressing issues as provided by general law.” (Emphasis supplied.) General law requires this Court to address and determine the single-subject requirement delineated in article XI, section 3 of the Florida Constitution, and the requirements for the ballot title and summary delineated in section 101.161(1), Florida Statutes (2009). See Advisory Op. to Att’y Gen. re 1.35% Property Tax Cap, Unless Voter Approved,, 2 So.3d 968, 971 (Fla.2009). Our review of these requirements is governed by two principles:
First, the Court will not address the merits or wisdom of the proposed amendment. Advisory Op. to Att’y Gen. re Treating People Differently Based on Race in Pub. Educ., 778 So.2d 888, 891 *679 (Fla.2000). Second, “[t]he Court must act with extreme care, caution, and restraint before it removes a constitutional amendment from the vote of the people.” Askew v. Firestone, 421 So.2d 151, 156 (Fla.1982).
Id. This Court has previously explained that the Florida Constitution expressly authorizes judicial review of constitutional amendments that are proposed by citizen initiative only in this Court. See Armstrong, 773 So.2d at 14 n. 18. Thus, the one constitutional provision that expressly addresses the jurisdiction of the judiciary for pre-election review of proposed constitutional amendments affords that jurisdiction exclusively to this Court with regard to citizen initiative amendments. Contrary to the position of the dissent, the Florida Constitution simply does not contemplate that the validity of an initiative petition will be challenged pre-election in any proceeding other than that expressly authorized by the Constitution, which permits this Court exclusively to address pre-election challenges when an advisory opinion is requested by the attorney general. See art. V, § 3(b)(10), Fla. Const.

Exclusive Jurisdiction of this Court

This Court in unequivocal terms has stated on at least two separate occasions that it has exclusive jurisdiction to consider the validity of citizen-initiative petitions. See Advisory Op. to Att’y Gen. re Stop Early Release of Prisoners, 661 So.2d 1204, 1205 (Fla.1995) (“The Attorney General of Florida has requested this Court to review a proposed amendment to the Florida Constitution, as it is his duty to do.... We have original and exclusive jurisdiction.” (emphasis supplied)); Advisory Op. to Att’y Gen. re Stop Early Release of Prisoners, 642 So.2d 724, 725 (Fla.1994) (“The Attorney General of Florida has petitioned this Court to review a proposed amendment to the Florida Constitution, as it is his duty to do. We have original and exclusive jurisdiction.” (emphasis supplied) (citation omitted)).
Further, although the circuit courts may be courts of general jurisdiction under the Florida Constitution and have the general authority to consider declaratory actions and issue injunctions, under rules of constitutional construction a specific statement that jurisdiction over one type of legal matter exists in another court removes jurisdiction from the circuit court to consider such matters. See McKendry v. State, 641 So.2d 45, 46 (Fla.1994) (“[A] specific statute covering a particular subject area always controls over a statute covering the same and other subjects in more general terms. The more specific statute is considered to be an exception to the general terms of the more comprehensive statute.” (citations omitted)); see also Coastal Florida Police Benev. Ass’n, Inc. v. Williams, 838 So.2d 543, 548 (Fla.2003) (“The rules which govern the construction of statutes are generally applicable to the construction of constitutional provisions.”). Thus, article V, section 3(b)(10), which provides that this Court shall consider the validity of citizen-initiative amendments, indicates that no other Florida court has jurisdiction to consider these types of pre-election petitions. Indeed, we adopted such an interpretation in the Stop Early Release of Prisoners opinions. See, e.g., 661 So.2d at 1205 (“We have original and exclusive jurisdiction.”).
Moreover, when attempts to challenge citizen initiatives in other courts have surfaced, we have previously transferred pre-election declaratory actions challenging initiative proposals to our Court, an action which is entirely consistent with our holding today that we possess exclusive jurisdiction to consider such matters. In Advisory Opinion to the Attorney General— *680 Fee on Everglades Sugar Production, 681 So.2d 1124 (Fla.1996), a declaratory action was filed in the circuit court while advisory opinion proceedings were pending in this Court with regard to three proposed initiative amendments. See id. at 1126-27. The sponsor of the proposed amendments, Save Our Everglades (SOE), petitioned this Court for an extraordinary writ, contending that
[t]he ... opponents have brought an action in the Leon County Circuit Court, which is improper, has no jurisdictional basis, and subverts the electoral process. SOE brings this petition to stop this invalid action and to preserve this Court’s jurisdiction over the initiative petition process.
... [I]t is unquestionable that this Court has sole jurisdiction over the initiative petition process. See Article XI, Section 3 and 5(a); Article TV, Section 10; Article V, Section 3(b)(10), Florida Constitution. This power is not vested in the Leon County Circuit Court or any other Circuit Court in the State. Additionally, the advisory opinion/initiative petition process has already begun in this Court.... This Court has the authority and obligation to enter an order transferring the lower court case to this Court for consideration.
Petition for Constitutional Writ at 1-2, Advisory Opinion to the Attorney General—Fee on Everglades Sugar Production, 681 So.2d 1124 (Fla.1996) (No. SC88343) (citation and footnote omitted). Ater considering the all writs petition, this Court ordered transfer of the declaratory action, demonstrating our agreement with SOE that the circuit court lacked subject matter jurisdiction to consider the validity of the proposed amendments.
Of necessity, a pre-election challenge to a citizen initiative proposed constitutional amendment is always in the nature and form of requesting an advisory opinion, which is specifically contemplated and addressed in the Florida Constitution to be exclusively within the authority of this Court. Further, there is no jurisdiction in any circuit court to render in the form of a declaratory judgment a determination with regard to the impact of a citizen initiative, which pre-election would be an advisory opinion addressing merely the possibility of legal injury based on purely hypothetical facts which have not arisen and are only contingent, uncertain and rest entirely on future possible facts. See, e.g., Santa Rosa County v. Admin. Comm’n, 661 So.2d 1190, 1193 (Fla.1996) (“[Ajbsent a bona fide need for a declaration based on present, ascertainable facts, the circuit court lacks jurisdiction to render declaratory relief.” (emphasis supplied)); Martinez v. Scanlan, 582 So.2d 1167, 1170 (Fla.1991) (“[Ajlthough a court may entertain a declaratory action regarding a statute’s validity, there must be a bona fide need for such a declaration based on present, ascertainable facts or the court lacks jurisdiction to render declaratory relief.” (emphasis supplied)); Bryant v. Gray, 70 So.2d 581, 584-85 (Fla.1954) (holding that circuit court lacked jurisdiction to enter a declaratory decree on the issue of whether an individual who desired to run for governor in 1954 to serve the unexpired term of a deceased governor would be eligible to seek re-election during the general election of 1956; the Court explained that “[n]o present right is involved. His question is hypothetical and is too remote as to time and too uncertain as to contingencies. He does not allege that he will be nominated or elected to either the unexpired term or a full term. There is no certainty that he will be.” (emphasis supplied)).

Florida League of Cities v. Smith and Lane v. Chiles

Despite this constitutional and case law, the circuit court concluded below that it *681 retained jurisdiction to consider the respondents’ declaratory action based primarily on statements in Florida League of Cities v. Smith, 607 So.2d 397 (Fla.1992), and the decision in Lane v. Chiles, 698 So.2d 260 (Fla.1997). However, neither of these decisions supports the assertion that following the 1986 amendments to the Florida Constitution, circuit courts retained jurisdiction to consider pre-election challenges to amendments proposed by citizen initiative.
In Smith, we had previously approved a citizen-initiative proposal that governed homestead exemptions for placement on the ballot. See 607 So.2d at 398. Shortly before the date of the election, two entities that had not participated in the earlier advisory opinion proceeding filed a petition for writ of mandamus with this Court contending that, if adopted, the proposed amendment would trigger a repeal of a portion of the Florida Constitution that governed the homestead exemption. See id. A party asserted that the repeal of this provision would have extreme and significant consequences for Florida taxpayers and local governments which the proposed ballot summary did not mention and sought to remove this proposed amendment from the ballot. See id.
This Court first addressed whether the earlier advisory opinion would operate as a procedural bar to this Court considering the subsequent challenge. See id. (“Initially, we must address the question of whether our earlier advisory opinion precludes us from considering the present cause.” (emphasis supplied)). In determining this issue, this Court relied upon legislative staff summaries and wrote the language that the circuit court relied upon below:
When those provisions were under consideration before the 1986 Legislature, the accompanying legislative staff summaries stated a belief that any advisory opinion regarding initiative petitions would not be binding precedent and would only constitute persuasive authority as to any other adversarial legal challenge that might later be raised. Staff of Fla. H.R. Comm, on Judiciary, CS/HJR 71 (1986), Staff Analysis 2 (March 6, 1986) (available from Fla. Div. of Archives); Staff of Fla. H.R. Comm, on Judiciary, PCS/HJR 71 (1986), Staff Analysis 2 (Feb. 18, 1986) (available from Fla. Div. of Archives). This necessarily implies that other legal challenges would continue to be permissible under existing precedent.
Id. at 398-99 (footnotes omitted). This Court ultimately concluded that “our precedent clearly holds that a petition for mandamus is an appropriate method for challenging an allegedly defective proposed amendment to the Constitution.” Id. at 399 (emphasis supplied).
Although the language used in the opinion relied on legislative staff summaries, the Smith case only addressed this Court’s ability to revisit an initiative proposal that it had previously approved for placement on the ballot. Indeed, there is no indication whatsoever that our analysis applied beyond a discussion of our own jurisdiction. See id. at 399 (“We emphasize, however, that relitigation of issues expressly addressed in an advisory opinion on a proposed amendment is strongly disfavored and almost always will result in this Court refusing to exercise its discretionary jurisdiction.” (emphasis supplied)). More recently we addressed the doctrine of law of the case and res judicata in this context. See Advisory Op. to Att’y Gen. re Referenda Required for Adoption & Amendment of Local Gov’t Comprehensive Land Use Plans, 938 So.2d 501, 505 (Fla.2006).
Further, although this Court relied on the legislative staff material in concluding *682 that its advisory opinions are not “binding,” the Smith decision inadvertently paraphrased those legislative staff analyses such that their actual meaning was obscured. The legislative staff summaries specifically provided:
It should be noted, however, that an advisory opinion would not be binding on a challenge brought subsequent to the adoption of the proposed amendment. Nonetheless, to the extent the challenge raises issues addressed in the advisory opinion, the opinion would, as a practical matter, prove to be extremely persuasive.
Fla. H.R. Gomm. on Judiciary, CS for HJR 71 (1986) Staff Analysis at 2 (March 6, 1986); Fla. H.R. Comm, on Judiciary, PCS for HJR 71 (1986) Staff Analysis at 2 (Feb. 18, 1986) (emphasis supplied). Thus, the discussion of advisory opinions as nonbinding in the staff summaries referred to challenges raised after adoption of the proposal, not before. Those legislative staff summaries do not support jurisdiction pre-election in any other court.
The ambiguous reference in Smith to the availability of “other legal challenges” appears to have led the circuit court here to erroneously conclude that all pre-election means of challenging citizen-initiative amendments in any Florida court survived the 1986 constitutional amendments. However, our later clear proclamation of exclusive jurisdiction to determine the validity of citizen-initiative proposals pre-election in the Stop Early Release of Prisoners opinions and Land Use Plans demonstrates that such a broad interpretation of Smith was not intended. Further, despite our description in Smith of advisory opinions as non-binding precedent, we later clarified in Ray v. Mortham, 742 So.2d 1276 (Fla.1999), that an “advisory”, opinion produces significant consequences:
[T]he amici have suggested that advisory opinions from this Court have little precedential value and are only persuasive .... However, none of these cases concern advisory opinions required by section 16.061, Florida Statutes (1997) [governing initiative proposals]. At the outset, we point out that when our “advisory” opinions conclude that there is a defect in the ballot title and summary or a violation of the single-subject requirement, the effect of our “advice” is the removal of the amendment from the ballot.
Id. at 1284. We also addressed the doctrine of law of the case and res judicata in Land Use Plans.
The respondents’ reliance on Lane v. Chiles, 698 So.2d 260 (Fla.1997), is similarly unavailing. In Lane, individuals challenged in the circuit court a fishing “net ban” amendment that previously had been adopted through an initiative petition. See id. at 262. In addition to procedural and substantive challenges, the individuals challenged the sufficiency of the ballot summary. See id. After the trial court granted summary judgment, upheld constitutionality of the amendment, and found that the time to challenge the ballot summary had passed, this Court accepted pass-through review of the trial court’s order. See id. With regard to the challenge to the sufficiency of the ballot summary, this Court stated in full:
We find this claim to be untimely and without merit. In addition to the fact that this Court specifically approved the ballot summary, the general rule is that a challenge to the form of a proposed amendment must be made before the amendment is adopted. Sylvester v. Tindall, [154 Fla. 663,] 18 So.2d 892 (Fla.1944). Lane filed this challenge on June 20, 1995, eight months after the amendment was adopted by a vote of the *683 people and less than two weeks before the amendment was to be effective on July 1,1995.
Id. at 265 (footnote omitted).
Contrary to the respondents’ assertions, this brief analysis does not constitute a holding that the circuit court maintains jurisdiction to consider pre-election ballot initiative challenges. Notably, our decision in Lane was issued in 1997, only two years after we proclaimed our original and exclusive jurisdiction over these matters. See Stop Early Release of Prisoners, 661 So.2d at 1205. Had we intended to overrule our prior declaration of exclusive jurisdiction, we would have done so in a more definite and express manner than the aforementioned language in Lane. As we previously explained in Puryear v. State, 810 So.2d 901 (Fla.2002):
[Tjhis Court does not intentionally overrule itself sub silentio. Where a court encounters an express holding from this Court on a specific issue and a subsequent contrary dicta statement on the same specific issue, the court is to apply our express holding in the former decision until such time as this Court recedes from the express holding.
Id. at 905 (emphasis supplied). We have not receded from the Stop Early Release of Prisoners opinions, and our express statement of exclusive jurisdiction in those cases prevails.
We conclude that to hold that an advisory opinion pursuant to article V, section 3(b)(10) is not an exclusive and final determination of the pre-election validity of an initiative proposal would be contrary to the Florida Constitution, the intent behind the 1986 amendments, and precedent from this Court. As a matter of policy, the purpose for the advisory opinion amendments was to allow citizen-initiative sponsors time to correct, if necessary, an invalid proposal in time for the proposed amendment to appear on the ballot. See Armstrong v. Harris, 773 So.2d 7, 14 n. 18 (Fla.2000); Fla. S. Comm, on Judiciary, CS for HJR 0071 (1986) Staff Analysis at 1-2 (May 20, 1986). To interpret the 1986 amendments in any other manner would be to simply nullify them and encourage serial attacks on citizen initiatives to thwart consideration indefinitely because the advisory opinion process would no longer serve its intended purpose. An opponent would be permitted to challenge an initiative proposal immediately before an election in an effort to remove that proposal from the ballot before it could ever be voted upon, thereby frustrating the democratic process. Thus, a pre-election declaratory challenge to an initiative proposal would be nothing less than a veiled attempt to re-write the Constitution and remove this Court’s exclusive responsibility to issue advisory opinions pursuant to article V, section 3(b)(10). Circuit courts are not authorized to issue advisory opinions. See Dep’t of Revenue v. Kuhnlein, 646 So.2d 717, 721 (Fla.1994) (“[P]arties must not be requesting an advisory opinion except in those rare instances in which advisory opinions are authorized by the Constitution.” (citation omitted)). The interpretation of the 1986 amendments advanced by the respondents would eviscerate any protections to ballot initiatives that those amendments were intended to ensure. We conclude that this interpretation is incorrect.

Application to this Case

In light of the foregoing, we hold that the circuit court’s determination that it retains subject matter jurisdiction to consider a pre-election declaratory challenge to an initiative proposal is erroneous. By continuing to consider the respondents’ challenges to Amendments 5 and 6, the circuit court is encroaching on this Court’s *684 exclusive jurisdiction and is acting in excess of its jurisdiction. With this conclusion we need not address additional issues concerning the propriety of the intervention, law of the case, or res judicata. Our limited determination here requires that we grant the petition and order the circuit court to dismiss the declaratory action.
The respondents have not demonstrated that the present matter is a “truly extraordinary case[]” as required by our cases or that they have raised a “vital issue” that was not addressed in the prior advisory opinion. Smith, 607 So.2d at 399. The respondents do not contend that adoption of the amendments will negate or vitiate a portion of the Florida Constitution. The challenges asserted in the amended complaint do not present a significant, undiscovered issue of potential internal constitutional conflict such as was asserted in Smith, so the high standard we have established for reopening citizen-initiative validity proceedings has not been satisfied.[2] We instead conclude that dismissal of the declaratory action will protect the integrity of the citizen-initiative process by precluding last-minute ballot challenges that seek to remove initiative amendments from the ballot where those challenges could have easily been presented during the advisory opinion process.
CONCLUSION
Accordingly, we grant the petition and utilize our jurisdiction under article V, section 3(b)(7) of the Florida Constitution to preclude the circuit court from taking any further pre-election action in this matter other than to dismiss the proceedings below. We trust that the circuit court will comply with our direction, and therefore, we withhold issuance of the writ.
It is so ordered.
CANADY, C.J., and LEWIS, QUINCE, and LABARGA, JJ., concur.
QUINCE, J., concurs with an opinion.
POLSTON, J., concurs in part and dissents in part with an opinion.
PARIENTE and PERRY, JJ., recused.

. The order of the circuit court also dismissed FairDistrictsFlorida.org as a party to the proceeding.

. Further, certain claims raised by the respondents involve challenges to the constitutionality of the amendments, which are not now justiciable under this Court's exclusive jurisdiction to review initiative proposals. See Advisory Op. to Att'y Gen.—Limited Political Terms in Certain Elective Offices, 592 So.2d 225, 227 (Fla.1991) (stating that challenges other than whether a proposed amendment and ballot title and summary comply with article XI, section 3, Florida Constitution, and section 101.161, Florida Statutes, are "not justiciable in the instant proceeding").