# Supreme Court of Florida

_____

No. SC14-987
_____

**THE LEAGUE OF WOMEN VOTERS OF FLORIDA, et al.,**
Petitioners,

vs.

**DATA TARGETING, INC., et al.,**
Respondents.

[May 27, 2014]

PER CURIAM.

This case is before the Court on an emergency petition for the issuance of a constitutional writ, filed by the League of Women Voters of Florida, Common Cause, and eleven individually named parties, who are all plaintiffs in an ongoing lawsuit challenging the constitutional validity of the 2012 plan apportioning Florida's congressional districts under the "Fair Districts Amendments" approved by Florida voters in 2010 to prohibit improper partisan and discriminatory intent in redistricting. See art. III, § 20(a), Fla. Const. The Respondents—political consulting organization Data Targeting, Inc., its president, and two company employees—are non-parties to the litigation that possess documents that the

Petitioners contend demonstrate "the surreptitious participation of partisan operatives in the apportionment process," in alleged violation of the Fair Districts Amendments to the Florida Constitution.

In consideration of the parties' arguments, this Court's case law, and the importance and statewide significance of this case, and for the reasons that follow, we grant the petition. Pursuant to our constitutional authority to issue "all writs necessary to the complete exercise of [our] jurisdiction," art. V, § 3(b)(7), Fla. Const., we stay the enforcement of the First District Court of Appeal's order that reversed the circuit court and prevented the disclosure or use of the documents at trial.

Based on the narrow and specific relief requested in the emergency petition, we determine that the circuit court is not precluded from admitting the documents into evidence, subject to a proper showing of relevancy, but that any disclosure or use of the documents must take place under seal in a courtroom closed to the public. We conclude that this is the only adequate, available remedy to maintain the status quo during the trial that is currently ongoing, and that there is a strong likelihood of irreparable harm to the Petitioners if the trial is conducted without the ability to offer this evidence—and no harm to the Respondents if the documents, which have already been produced, are admitted in this manner. In fact, this is similar to the remedy the Respondents themselves originally proposed in the circuit

court after producing the documents. See Non-Parties' Motion to Determine Confidentiality of Court Records at 8, Romo v. Detzner, Nos. 2012-CA-00412 & 2012-CA-00490 (Fla. 2d Jud. Cir. Ct. May 12, 2014). However, in granting the petition, we emphasize that this opinion is not a determination that these documents will be permanently under seal or that they are in fact protected by the associational privilege and should be shielded from the public.

## BACKGROUND

The issue presented by this emergency petition for extraordinary writ relief concerns certain documents in the possession of non-parties to the redistricting litigation, which are allegedly relevant to the constitutional claims currently being argued in the trial that is taking place in a Leon County circuit court. After the circuit court determined that the challenged documents were not privileged, the Respondents subsequently produced the documents to the trial judge and to counsel and experts for the Petitioners, although the circuit court directed that the documents would remain confidential. See Romo v. Detzner, Nos. 2012-CA-00412 & 2012-CA-00490, Order at 2-3 (Fla. 2d Jud. Cir. Ct. May 2, 2014).

The circuit court stated that it would provide further guidance at a later time as to how the documents could be used at trial, see id. at 3, which the court then did in a second order entered two weeks later, in anticipation of the start of the trial the following week. See Romo v. Detzner, Nos. 2012-CA-00412 & 2012-CA-

00490 (Fla. 2d Jud. Cir. Ct. May 15, 2014). In this order, the circuit court determined that the documents themselves were to remain confidential, even "if offered as an exhibit in witness examination or entered into evidence in the trial of this case," but that the proceedings "shall remain open" during use of the documents by any party at trial. Id. at 3.

Thereafter, in a short ruling that promised a forthcoming opinion explaining its reasoning in greater detail, the First District reversed the circuit court, stating in full as follows:

> The orders of the lower tribunal entered May 2, 2014, and May 15, 2014, are REVERSED to the extent the orders permit any degree of disclosure or use at trial of the constitutionally-protected contents of the privileged and confidential documents that are the subject of those orders. See Perry v. Schwarzenegger, 591 F.3d 1147 (9th Cir. 2010). An opinion of this court explaining its reasoning will follow.

Non-Parties, Pat Bainter, Matt Mitchell v. League of Women Voters of Fla., No. 1D14-2163 (Fla. 1st DCA order filed May 22, 2014) (reversing circuit court).

The case cited by the First District in its order arises from the United States Court of Appeals for the Ninth Circuit and pertains to the First Amendment associational privilege. See id. (citing Perry, 591 F.3d 1147). The First District also denied the Petitioners' emergency motion to stay its decision during the pendency of the trial. See Non-Parties, Pat Bainter, Matt Mitchell v. League of Women Voters of Fla., No. 1D14-2163 (Fla. 1st DCA order filed May 22, 2014) (denying emergency request for stay).

- 4 -

The following day, the Petitioners filed the emergency petition now before this Court, seeking to stay the enforcement of the First District's order precluding the admission of the documents "so that the trial can be completed with this evidence, which has already been disclosed to the parties' counsel and the trial court, in time for the trial court to fashion meaningful relief before the upcoming 2014 midterm elections." The petition asserts that these documents are relevant to the Petitioners' claims as to the unconstitutionality of the 2012 congressional apportionment plan because they allegedly indicate that the non-parties worked with other partisan operatives to submit, through "public front persons," draft redistricting maps for the Legislature's consideration. In other words, the Petitioners contend that these documents are important evidence for establishing their claim that there was "a parallel redistricting process" to the open and transparent one, which was "conducted in the shadows" in an effort to "subvert[] the public process" and produce a partisan map favoring Republicans and incumbents in violation of the Florida Constitution.

**DISCUSSION**

Since the passage of the Fair Districts Amendments, this Court has considered their impact and the "more stringent requirements as to apportionment" that they provide in a series of important decisions. In re Senate Joint Resolution of Legislative Apportionment 1176 (Apportionment I), 83 So. 3d 597, 598 (Fla.

2012); see also In re Senate Joint Resolution of Legislative Apportionment 2–B (Apportionment II), 89 So. 3d 872 (Fla. 2012); Fla. House of Representatives v. League of Women Voters of Fla. (Apportionment III), 118 So. 3d 198 (Fla. 2013); League of Women Voters of Fla. v. Fla. House of Representatives (Apportionment IV), 132 So. 3d 135 (Fla. 2013). Indeed, in December of last year, this Court addressed a claim of privilege concerning the very types of information implicated by this petition, in a case related to the same ongoing circuit court litigation. See Apportionment IV, 132 So. 3d at 140-41.

Specifically, in that case, this Court held that even the significance of a legislative privilege founded on the fundamental principle of separation of powers must yield to the compelling, competing interest in effectuating the constitutional Fair Districts reapportionment standards and "ensuring that the Legislature does not engage in unconstitutional partisan political gerrymandering." Id. at 148. Our decision in Apportionment IV, as well as our other recent redistricting cases, makes clear that this litigation is unique because it impacts the statewide operation of government and the validity of Florida's current system of government through the alleged unconstitutionality of the 2012 apportionment plan.

Article V, section 3(b)(7), of the Florida Constitution provides that this Court may issue "all writs necessary to the complete exercise of its jurisdiction." (Emphasis added.) In Roberts v. Brown, 43 So. 3d 673 (Fla. 2010), we explained

that although the doctrine of all writs is not an independent basis for jurisdiction, this Court may utilize the constitutional all writs provision as a means of "preserving jurisdiction that has already been invoked or <u>protecting jurisdiction that likely will be invoked in the future</u>." <u>Id.</u> at 677 (emphasis added); <u>see also</u> <u>Petit v. Adams</u>, 211 So. 2d 565, 566 (Fla. 1968) (providing that this Court may use its all writs authority if necessary to preserve the status quo and protect this Court's ability to completely exercise jurisdiction at a future time).

We have fully considered the First District's order, the underlying orders of the circuit court, and the parties' arguments concerning our jurisdiction. After careful review, we have determined that the First District's forthcoming decision on this issue is highly likely to construe both the First Amendment of the United States Constitution and the Fair Districts Amendments of the Florida Constitution. Indeed, in reversing the circuit court, the First District relied on a case holding that courts are required to consider the importance of the litigation in evaluating whether information is protected by the associational privilege. <u>See</u> <u>Perry</u>, 591 F.3d at 1161. In this case, this determination is highly likely to require the construction of not only the First Amendment, but also the Fair Districts Amendments and this Court's decision in <u>Apportionment IV</u>, which repeatedly emphasized the important "public interest in ensuring that the Legislature does not engage in unconstitutional partisan political gerrymandering." <u>Apportionment IV</u>,

132 So. 3d at 148. While we are unable at this time to determine the likelihood that the First District's forthcoming decision will expressly affect a class of constitutional officers, as argued by the emergency petition, we observe that we previously accepted jurisdiction on this basis regarding a related issue in Apportionment IV. See id. at 142. In addition, given the statewide importance of this litigation and the lack of Florida precedent regarding the associational privilege, we note that the First District may certify a question to this Court in issuing its forthcoming decision, which would undeniably vest us with jurisdiction under article V, section 3(b)(4), of the Florida Constitution.

In order to maintain the status quo during the ongoing trial, preserve this Court's ability to completely exercise the eventual jurisdiction it is likely to have to review the First District's decision, and prevent any irreparable harm that might occur if the Petitioners are prevented from using the challenged documents, we conclude that we must grant the petition and stay the enforcement of the First District's reversal of the circuit court, pending the completion of the trial. See Amends. to Fla. Rules of Crim. P. 3.853(d)(1)(A) (Postconviction DNA Testing), 857 So. 2d 190 (Fla. 2003) (exercising all writs authority to hold a statute in abeyance while this Court considered its jurisdiction and other matters in order to avoid rendering proceedings moot and precluding this Court, should it determine it had jurisdiction, from the "complete exercise" thereof); cf. Monroe Educ. Ass'n v.

<u>Clerk, Dist. Ct. of Appeal, Third Dist.</u>, 299 So. 2d 1, 3 (Fla. 1974) (noting the importance of the Court's all writs authority with respect to "certain cases [that] present extraordinary circumstances involving great public interest where emergencies and seasonable considerations are involved that require expedition").

Accordingly, we hereby exercise our discretion under article V, section 3(b)(7), of the Florida Constitution to issue all writs necessary to the complete exercise of our jurisdiction, and stay the enforcement of the First District's May 22, 2014, order reversing the circuit court's May 2, 2014, and May 15, 2014, orders, pending the conclusion of the ongoing trial. As specifically requested in the emergency petition, the circuit court is not precluded from admitting the documents into evidence, subject to a proper showing of relevancy, but shall maintain the confidentiality of the documents by permitting any disclosure or use only under seal of the court and in a courtroom closed to the public.

No motion for rehearing will be entertained by the Court. It is so ordered.

PARIENTE, QUINCE, LABARGA, and PERRY, JJ., concur.
LEWIS, J., concurs with an opinion.
POLSTON, C.J., dissents with an opinion in which CANADY, J., concurs.


LEWIS, J., concurring.

I concur with the decision to grant the petition, but write separately to explain why the exercise of all writs jurisdiction is appropriate here. If the order of

the First District Court of Appeal, which precludes the disclosure or use during trial of documents that were determined by the circuit court to be discoverable with regard to the 2012 redistricting, remains in effect, the trial will proceed without their admission. Such an outcome will frustrate the fact-finding ability of the circuit court to determine whether the 2012 redistricting was conducted in a fair, impartial, and nonpartisan fashion, as required by the Florida Constitution. The First District has, by preventing consideration of these documents during trial, jeopardized the stability and integrity of our governmental structure and authorized those who interact with the Florida Legislature on a critical matter such as redistricting to operate under a veil of secrecy. This outcome should be most disconcerting to any supporter of our democratic form of government.

The First District stated that it will issue an opinion to provide the rationale for the reversal of the circuit court orders. As previously discussed in the opinion granting the petition, precedent establishes that we possess the authority under the doctrine of all writs to intervene now and protect the status quo while we determine whether jurisdiction ultimately exists to review the issue presented.[1] The issue is one that impacts the statewide operation of Florida government and is, therefore, one of paramount importance. In Petit v. Adams, 211 So. 2d 565 (Fla.

---

1. Indeed, the opinion granting the petition demonstrates it is highly likely that this Court will have jurisdiction to review the forthcoming opinion by the district court. See majority op. at 7-8.

1968), when presented with an electoral challenge that impacted Dade County, the

Court utilized its all writs authority to maintain the status quo where action by a

county canvassing board would have otherwise rendered the proceedings moot:

> [I]t is apparent from the disclosures of the petition that it is the intention of the respondents constituting the Dade County Canvassing Board to erase the counters on all of said machines beginning at 5 o'clock p.m., Friday, June 7th, unless this Court directs otherwise. The erasure of such counters would render these proceedings moot and would in effect prevent this Court, in the event it determines it has jurisdiction, from the complete exercise thereof.
>
> Upon consideration of the matter and pursuant to Article V, Section 4(2) which provides "the Supreme Court may issue all writs necessary or proper to the complete exercise of its jurisdiction," the respondents in this cause are hereby directed to refrain from in any way erasing the results of said second primary election on any voting machine used therefor in Dade County, Florida until the further order of this Court.

Id. at 566.  More recently, this Court utilized the all writs power to preserve

physical evidence for DNA testing so that two pending emergency petitions related

to the issue could be considered.  See Amends. to Fla. Rule of Crim. P.

3.853(d)(1)(A) (Postconviction DNA Testing), 857 So. 2d 190 (Fla. 2003).  The

Court explained:

> To allow this Court an opportunity to fully consider the petitions, the deadline of October 1, 2003, set forth in rule 3.853(d)(1)(A), is hereby suspended until further order of this Court. Further, as petitioners point out, operation of the same deadline in section 925.11(1)(b)1., Florida Statutes (2002), may result in the non-preservation of physical evidence for DNA testing under section 925.11(4)(b).  Because such a result would render these proceedings moot and in effect preclude this Court, should it determine it has jurisdiction, from the "complete exercise" thereof, the deadline in

- 11 -

> section 925.11(1)(b)1. is hereby held in abeyance while this Court considers its jurisdiction and other matters before it. See art. V, § 3(b)(7), Fla. Const. By our actions herein, we express no opinion on the merits of the underlying petitions. Accordingly, by operation of the terms of the statute, the evidence described in section 925.11(4)(a) "shall be maintained for at least the period of time" controlled by the abeyance. No other provision of the rule or statute is affected by this order.

Id. at 190.

While the use of all writs in this manner occurs in only the most urgent of situations, I cannot think of a situation more urgent than precluding the disclosure and use of documents during trial to potentially demonstrate that our entire legislative structure is a façade and was not redistricted in compliance with the Florida Constitution. Moreover, if the trial proceeds in accordance with the order of the First District, this issue will become moot due to the time sensitive nature of the proceedings, and there will be no adequate remedy to correct a possible manifest injustice. Therefore, utilization of the doctrine of all writs to preserve the status quo is unquestionably within the parameters of our authority. See id. at 190; Petit, 211 So. 2d at 566. This is the only way the validity and operation of our democratic system of government in Florida—and public faith in that system—can be protected.

Accordingly, I wholeheartedly concur with the decision of the majority to grant the petition.

POLSTON, C.J., dissenting.

Because Florida's constitution does not grant this Court the jurisdiction to generally weigh in on evidentiary rulings and discovery disputes in ongoing civil trials, I respectfully dissent. In fact, with today's decision, this Court effectively and unconstitutionally usurps the role of the First District Court of Appeal as the appellate court vested with jurisdiction over this interlocutory appeal of a civil evidentiary ruling.

The petitioners seek to invoke this Court's all writs jurisdiction, but before exercising all writs jurisdiction, this Court must first have an independent basis for jurisdiction. This is because "[t]he all writs provision of section 3(b)(7) does not confer added appellate jurisdiction on this Court, and this Court's all writs power cannot be used as an independent basis of jurisdiction." St. Paul Title Ins. Corp. v. Davis, 392 So. 2d 1304, 1305 (Fla. 1980). In Williams v. State, 913 So. 2d 541, 543 (Fla. 2005), this Court emphasized that the all writs provision of the Florida Constitution "does not constitute a separate source of original or appellate jurisdiction. Rather, it operates as an aid to the Court in exercising its 'ultimate jurisdiction,' conferred elsewhere in the constitution."

Here, the petitioners concede that this Court does not currently have jurisdiction over this case. The proceedings below involve a dispute over allegedly privileged and confidential documents and a district court order (and an expected,

- 13 -

eventual opinion) in the interlocutory appeal of a trial court's ruling regarding that dispute. The petitioners and the majority hypothesize about what the First District might eventually discuss in its opinion reversing the trial court, but such guesses do not constitute an independent basis for jurisdiction. If the First District, as the majority hypothesizes, issues an opinion construing the First Amendment to the United States Constitution or an amendment to the Florida Constitution, then this Court could eventually choose to exercise its discretionary jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution. However, granting an all writs petition at this point is improper because an independent basis for jurisdiction does not currently exist.

The majority quotes Roberts v. Brown, 43 So. 3d 673, 677 (Fla. 2010), and claims it is granting this all writs petition to "protect[] jurisdiction that likely will be invoked in the future." But, unlike this case, there was an independent and nonspeculative basis for this Court's jurisdiction in Roberts, namely this Court's exclusive jurisdiction over pre-election challenges to constitutional amendments proposed through the citizen initiative process. Id. at 678 ("The applicability of the writ of prohibition in this case hinges upon the identical issue that is determinative of whether the doctrine of all writs applies; that is, the exclusiveness of this Court's jurisdiction to consider pre-election challenges to proposed citizen-initiative constitutional amendments."); see also United Servs. Auto. Ass'n v. Goodman, 826

- 14 -

So. 2d 914, 915 (Fla. 2002) (exercising all writs jurisdiction to vacate circuit court orders that encroached on this Court's exclusive jurisdiction to adopt rules pursuant to article V, section 2(a) of the Florida Constitution); Fla. Senate v. Graham, 412 So. 2d 360, 361 (Fla. 1982) ("Because jurisdiction of the issue of apportionment will vest in this Court with certainty in this year we have the jurisdiction conferred by article V, section 3(b)(7), to issue all writs necessary to the complete exercise and in aid of the ultimate jurisdiction imposed by article III, section 16(b), (c) and (f)."). Additionally, the First District's current order is most akin to an unelaborated per curiam opinion or order merely citing another decision, and this Court has ruled that it does not have extraordinary writ jurisdiction over such opinions and orders. See Persaud v. State, 838 So. 2d 529 (Fla. 2003) (stating that this Court lacks discretionary review jurisdiction to review per curiam decisions of the district courts that simply affirm with citations to cases not pending review in this Court, and that extraordinary writs also cannot be used to seek review of such decisions); see also Dodi Publ'g Co. v. Editorial Am., S.A., 385 So. 2d 1369 (Fla. 1980), and Jollie v. State, 405 So. 2d 418 (Fla. 1981) (together standing for proposition that this Court lacks jurisdiction to review per curiam opinions citing a case not pending review in this Court).

The majority's action in this case is truly unprecedented. The majority is simply guessing at what the First District's opinion will state as the basis for its

- 15 -

ruling in order to engage in the active trial management of evidentiary rulings that are subject to the jurisdiction of Florida's district courts of appeal. Moreover, by requiring admission of the evidence at issue, rather than a proffer pending review by this Court of the yet-issued First District opinion, the majority has adjudicated the opinion not yet written to be in error. In short, this Court has predetermined appellate error and awarded the petitioners full relief in the trial court by requiring admission of evidence. Such action does not act to protect this Court's jurisdiction; it expands it outside the bounds of the constitution.

Accordingly, I respectfully dissent.

CANADY, J., concurs.

Original Proceedings – All Writs

Mark Herron, Robert J. Telfer, III, and Angelina Perez of Messer, Caparello & Self, P.A., Tallahassee, Florida; John Stewart Mills, Andrew David Manko, and Courtney Rebecca Brewer of The Mills Firm, P.A., Tallahassee, Florida; and David B. King, Thomas Alan Zehnder, Frederick Stanton Wermuth, and Vincent Falcone, III, of King, Blackwell, Zehnder & Wermuth, P.A., Orlando, Florida,

for Petitioners

D. Kent Safriet, Thomas Roy Philpot, and Mohammad Omar Jazil of Hopping Green & Sams, P.A., Tallahassee, Florida,

for Respondents