# Supreme Court of Florida

_____

No. SC20-323
_____

**STATE OF FLORIDA,**
Petitioner,

vs.

**BESSMAN OKAFOR,**
Respondent.

November 25, 2020

PER CURIAM.

This case is before the Court on a petition filed by the State of Florida. *See* art. V, § 3(b)(7), Fla. Const. The State asks us to reinstate the 2015 death sentence of Bessman Okafor, which we vacated on direct appeal in 2017 under the then-applicable rule of *Hurst v. State*, 202 So. 3d 40 (Fla. 2016). We partially receded from *Hurst* in *State v. Poole*, 297 So. 3d 487 (Fla. 2020), and Okafor's resentencing has yet to occur. The State argues that reinstatement of Okafor's death sentence is required because *Poole* took away the legal basis for our vacatur of that sentence and because the sentence would have been constitutional under the correct rule announced in *Poole*.

We hold that our judgment vacating Okafor's death sentence is final, that neither we nor the trial court can lawfully reinstate that sentence, and that resentencing is therefore required. In reaching this conclusion, we acknowledge the burden that resentencing proceedings will place on the victims of Okafor's crimes. We also acknowledge the consequences for the victims in similar cases that will be governed by our decision here. Nonetheless, our holding is compelled by applicable law.

## BACKGROUND

In 2015, a jury found Bessman Okafor guilty of first-degree premeditated murder for the killing of Alex Zaldivar. The jury also found Okafor guilty of attempted first-degree murder and armed burglary of a dwelling with explosives or a dangerous weapon. *Okafor v. State*, 225 So. 3d 768, 772 (Fla. 2017). Consistent with the jury's 11-to-1 recommendation, the trial court sentenced Okafor to death for the first-degree murder conviction. We affirmed the conviction on direct appeal, but we vacated Okafor's death sentence and remanded for a new penalty phase proceeding. *Id.* at 770.

Our vacatur of Okafor's death sentence relied on *Hurst*. *Id.* at 775. In *Hurst* we had held, among other things, that a defendant is not constitutionally eligible for a death sentence unless there is a unanimous jury recommendation of death and a unanimous jury finding that the aggravating factors outweigh any mitigating

- 2 -

circumstances. Several years later, in *Poole*, we receded from *Hurst* "except to the extent that it held that a jury must unanimously find the existence of a statutory aggravating circumstance beyond a reasonable doubt." *Poole*, 297 So. 3d at 491. Given the jury's unanimous verdicts finding Okafor guilty of one or more contemporaneous violent felonies, Okafor would have been constitutionally eligible for a death sentence under the rule of *Poole*.

We decided *Poole* on January 23, 2020, at which time Okafor's resentencing trial had not yet begun. Therefore, our *Poole* decision in hand, the State asked the trial court to reinstate Okafor's death sentence. At a hearing on the State's motion, the trial court asked counsel for the State: "[D]o you have a case from the Florida Supreme Court that would say that I can ignore their mandate under the situation that we find ourselves in?" The State admitted it had no such authority and acknowledged that the deadline to seek a recall of the mandate had expired years earlier.[1] The trial court denied the State's motion, ruling that a circuit court lacks the authority to ignore a supreme court mandate.

The State then filed a petition in this Court invoking article V, section 3(b)(7) of the Florida Constitution. The petition asks that we issue either: (1) a constitutional writ (under the "all writs" provision of article V) directing the trial

---

1. The mandate directing the trial court to comply with our judgment vacating Okafor's death sentence (in light of *Hurst*) issued on September 18, 2017.

court to reinstate Okafor's death sentence; or (2) a writ of prohibition directing the trial court not to go forward with Okafor's new penalty phase trial.

## JURISDICTION

Our jurisdiction to consider the State's request for a writ of prohibition is not in question. But Okafor argues that we lack jurisdiction to consider the State's request for a constitutional writ under the "all writs" provision of article V, section 3(b)(7). That provision says that the supreme court may issue "all writs necessary to the complete exercise of its jurisdiction." Art. V, § 3(b)(7). It has long been understood that "the doctrine of all writs is not an independent basis for this Court's jurisdiction." *Roberts v. Brown*, 43 So. 3d 673, 677 (Fla. 2010). "Rather, its use is restricted to preserving jurisdiction that has already been invoked or protecting jurisdiction that likely will be invoked in the future." *Id.*

The conditions for us to exercise jurisdiction to hear the State's all writs petition are satisfied here. We previously exercised jurisdiction over the appeal of Okafor's murder conviction and death sentence, and the State's petition questions the continuing validity of our judgment resolving that appeal. Moreover, this Court traditionally has taken an expansive view of our supervisory jurisdiction over all proceedings in cases where a death sentence has been imposed. For example, we have said: "[I]n addition to our appellate jurisdiction over sentences of death, we have exclusive jurisdiction to review all types of collateral

- 4 -

proceedings in death penalty cases. This includes cases in which this Court has vacated a death sentence and remanded for further penalty proceedings." *State v. Fourth Dist. Ct. of Appeal*, 697 So. 2d 70, 71 (Fla. 1997); *see also Bedford v. State*, 633 So. 2d 13, 14 (Fla. 1994) (finding all writs jurisdiction to consider a challenge to a kidnapping sentence because "[w]e previously had jurisdiction of Bedford's kidnapping sentence in conjunction with his appeal from a conviction of first-degree murder and a sentence of death"). In light of these precedents, we have jurisdiction to consider on the merits the State's request under the all writs provision.

## ANALYSIS

### A. All Writs

This case ultimately is about the finality of our judgment resolving Okafor's appeal. It is a bedrock principle that "the judgment of an appellate court, where it issues a mandate, is a final judgment in the cause." *O.P. Corp. v. Village of N. Palm Beach*, 302 So. 2d 130, 131 (Fla. 1974); *see also* Philip J. Padovano, *Florida Appellate Practice* § 20:8 (2020 ed.) ("An appellate court decision ordinarily becomes final when the appellate court issues a document known as a mandate."). When the mandate issued in Okafor's appeal, *our* judicial labor was complete, even though our judgment resolving the appeal required further proceedings in the trial court.

The substance of our judgment was to "vacate [Okafor's] death sentence and remand for a new penalty phase." *Okafor*, 225 So. 3d at 770. When an appellate court vacates a sentence and orders a remand, "there is no sentence until the [trial] court imposes a new one." *United States v. Mobley*, 833 F. 3d 797, 802 (7th Cir. 2016). "A prior sentence, vacated on appeal, is a nullity." *Teffeteller v. State*, 495 So. 2d 744, 745 (Fla. 1986). Accordingly, as to Okafor's death sentence (though not his murder conviction), our judgment "wiped the slate clean." *Pepper v. United States*, 562 U.S. 476, 507 (2011).

In order to change this status quo—to undo our final judgment vacating Okafor's death sentence—we would have to recall our mandate and then render a different judgment. But the law constrains our ability to do so. Section 43.44, Florida Statutes (2019), says that an appellate court's mandate "may not be recalled more than 120 days after it has been issued." Similarly, Florida Rule of Appellate Procedure 9.340(a) says that a "court may direct the clerk to recall the mandate, but not more than 120 days after its issuance."

We have no authority to use the all writs provision to do indirectly what governing law prevents us from doing directly. It is undisputed that the 120-day deadline to recall the mandate in Okafor's appeal expired long before our decision in *Poole* and therefore before the State's subsequent petition seeking the reinstatement of Okafor's death sentence. In these circumstances, there is no

available legal means for us to undo our final judgment vacating Okafor's death sentence.[2]

The State resists this conclusion on several grounds, starting with its assertion that our judgment vacating Okafor's conviction is not final. The State refers to our judgment as a "non-final order" and argues that there will be no "finality as to judgment" in Okafor's case until he is resentenced. But the overall finality of Okafor's case is not at issue here. What matters is the finality of our judgment vacating Okafor's death sentence. Under the binding legal principles we have explained, that judgment became final when our mandate issued, and we have no authority to revisit that judgment now.

The State also argues that recognized exceptions to the law of the case doctrine allow us to reinstate Okafor's death sentence. "The law-of-the-case doctrine is the long-established 'principle that the questions of law decided on appeal to a court of ultimate resort must govern the case in the same court and the trial court, through all subsequent stages of the proceedings.'" *Delta Prop. Mgmt. v. Profile Invs., Inc.*, 87 So. 3d 765, 770 (Fla. 2012) (quoting *McGregor v. Provident Tr. Co.*, 162 So. 323, 327 (Fla. 1935)). One exception to the doctrine allows departure from the law of the case when there has been "an intervening

_____

2. The State has not identified any common law writ that would allow us to reinstate a previously vacated sentence, and our research failed to uncover one.

- 7 -

decision by a higher court contrary to the decision reached on the former appeal."

*Strazzulla v. Hendrick*, 177 So. 2d 1, 4 (Fla. 1965).  More broadly, the State points

to our past recognition that we have "the power to reconsider and correct erroneous

rulings in exceptional circumstances and where reliance on the previous decision

would result in manifest injustice, notwithstanding that such rulings have become

the law of the case."  *State v. Owen*, 696 So. 2d 715, 720 (Fla. 1997).  According to

the State, the injustice exception applies here because it would "violate the

Constitution" for the trial court in this case to continue to "follow" *Hurst*.

These principles are of no help to the State, because the issue presented by

the State's petition does not turn on the law of the case doctrine.  Subject to its

exceptions, that doctrine locks in an appellate court's decisions on "questions of

law" for later phases of the same case.  Here the State's petition does not present

the question whether this Court or the trial court should adhere to an earlier

appellate decision on a question of law.  More specifically, the State's petition does

not ask us to decide whether *Poole*, rather than *Hurst*, should govern Okafor's

resentencing *going forward*.[3]  Rather, the petition asks us to revisit and undo a

_____

3. There is no dispute that Okafor's resentencing is to be governed by the procedures in the existing capital sentencing statute, which are more generous to the defendant than the constitutional baseline established in *Poole*.  *See* § 921.141, Fla. Stat. (2019).  The State's petition is not about the legal standards to be applied in Okafor's resentencing, but about whether there should be a resentencing at all.

final judgment. The exceptions to the law of the case doctrine do not speak to that issue.[4]

Our opinion in *Owen* well illustrates the difference between a final appellate court judgment and the decisions on questions of law that underlie that judgment. Owen had been convicted of murder and sentenced to death, but we vacated the conviction on the ground that it was tainted by an involuntary confession. *Owen*, 696 So. 2d at 717. Before Owen's retrial, an intervening Supreme Court decision changed the governing law by adopting a rule under which Owen's confession would have been admissible. The State then asked the trial court to reconsider the admissibility of Owen's confession for purposes of the retrial. After the trial court denied the request, the State sought certiorari relief from the district court. The district court denied the petition, holding that the suppression of Owen's confession was the law of the case, but it certified the question to this Court. *Id.*

The State in *Owen* asked our Court for two forms of relief. It first asked that we change the law of the case so that, under the new rule of law announced by the

_____

4. The State identifies two cases in which district courts of appeal denied motions to enforce mandates after concluding that intervening Florida Supreme Court decisions justified departure from the law of the case. *See Marshall v. State*, No. 2D16-1095, 2019 WL 5296709 (Fla. 2d DCA Oct. 18, 2019); *Morales v. State*, 580 So. 2d 788 (Fla. 3d DCA 1991). Neither court addressed the finality of judgment principle that we discuss here, and neither involved the detailed statutory procedures that govern sentencing in death penalty cases. Therefore we do not find these cases persuasive.

Supreme Court, Owen's confession would be admissible in the retrial. We applied an exception to the law of the case doctrine and granted the State's request.

But the State went further, asking us to "reinstate Owen's conviction on the ground that a retrial is unnecessary in light of our decision [finding the confession admissible]." *Id.* at 720. We said we were "unwilling to go that far." *Id.* And we explained why:

> Our prior decision which reversed Owen's convictions and remanded for a new trial is a final decision that is no longer subject to rehearing. With respect to this issue, Owen stands in the same position as any other defendant who has been charged with murder but who has not yet been tried. Just as it would be in the case of any other defendant, the admissibility of Owen's confession in his new trial will be subject to the *Davis* rationale that we adopt in this opinion. However, Owen's prior convictions cannot be retroactively reinstated.

*Id.* The same reasoning applies here. While *Poole* established a new constitutional baseline going forward, our judgment vacating Okafor's death sentence is final and no longer subject to reconsideration.

Finally, the State argues that it is unreasonable and unjust to require the trial court to resentence Okafor now that *Poole* has removed the constitutional basis for our vacatur of Okafor's death sentence. We acknowledge the force of the State's argument. Most importantly, we appreciate the substantial burden that resentencing will place on the victims of Okafor's crimes. And we realize that resentencing in a capital case is time-consuming and costly, all at the public's

- 10 -

expense. These considerations, however compelling, do not give us license to exceed the legal constraints on our authority.

B. *Prohibition*

In light of our conclusion that we cannot reconsider our judgment vacating Okafor's death sentence, the State's request for a writ of prohibition merits little discussion. "Prohibition is an extraordinary writ by which a superior court may prevent an inferior court or tribunal, over which it has appellate and supervisory jurisdiction, from acting outside its jurisdiction." *Mandico v. Taos Constr., Inc.*, 605 So. 2d 850, 854 (Fla. 1992). Here, the trial court ruled correctly when it denied the State's motion to reinstate Okafor's death sentence. As the trial court itself recognized, it has both the jurisdiction and the obligation to conduct a new penalty phase proceeding. "A trial court is without authority to alter or evade the mandate of an appellate court absent permission to do so." *Blackhawk Heating & Plumbing Co. v. Data Lease Fin. Corp.*, 328 So. 2d 825, 827 (Fla. 1975). Just like this Court, the trial court lacks the authority to reconsider our final judgment vacating Okafor's death sentence.

## CONCLUSION

The State's petition is denied.

It is so ordered.

CANADY, C.J., and POLSTON, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.
LABARGA, J., concurs in result.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Original Proceeding – All Writs

Ashley Moody, Attorney General, Tallahassee, Florida, and Doris Meacham, Assistant Attorney General, Daytona Beach, Florida,

    for Petitioner

Mark E. Olive of Law Office of Mark E. Olive P.A., Tallahassee, Florida; Sandra Lee Woodall, Orlando, Florida; and Marc J. Burnham, Orlando, Florida,

    for Respondent

Elliot H. Scherker of Greenberg Traurig, P.A., Miami, Florida,

    for Amici Curiae Paolo Annino, Richard M. Benham, Howard K. Blumberg, Neil Chonin, John A. Devault, III, Juan Carlos Gomez, Bryan Gowdy, Scott F. Norberg, Patsy Palmer, Ediberto Roman, George E. Schulz, Jr., Harvey S. Sepler, Rebecca Sharpless, and Sylvia H. Walbolt